ARANSAS COMPRESS CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4378.   Promulgated September 22, 1927.

Payments made to a public utility corporation by a citizens' committee to induce it to erect a cotton compress and warehouse, such citizens receiving no direct benefit from the corporation for such payments, held, not to be income.

*W. R. Brown, Esq.*, for the petitioner.
*George G. Witter, Esq.*, for the respondent.

This proceeding arises upon the petition of the Aransas Compress Co. for a redetermination of deficiencies of $2,647.80 and $5,112.74 determined by the Commissioner for the fiscal years ended May 31, 1920, and May 31, 1921, respectively. The petitioner alleges that the Commissioner committed error in including as income for the taxable years involved certain cash and the value of certain lands received from citizens of two communities in consideration of the erection of plants therein.

FINDINGS OF FACT.

The petitioner is a Texas corporation with its principal office at Corpus Christi.

Prior to June 1, 1919, the petitioner owned a compress plant at Sinton, Tex. During the fiscal year ended May 31, 1920, the petitioner moved its plant from Sinton to Robstown, Tex. This removal was pursuant to a written contract between the petitioner and certain citizens of Robstown, the material portions of which are as follows:

THIS AGREEMENT entered into this day by and between the Aransas Compress Co., acting through its Sec'y.-Treas & Gen'l Manager J. K. Cain, party of the first part, and the Citizens of Robstown, Texas acting through their Committee, party of the second part, to-wit:

That, the party of the first part agree to build, erect and put in a first class Webb Cotton Compress complete on the piece or parcel or tract of land to be conveyed by said second party to first party, plat of which is attached hereto and forming a part of this contract.

11340°—28——13

That, the party of the first part agree to build not less than Seventy Five Thousand (75,000) square feet of Platform adjacent to said Compress with not less than Sixty Thousand (60,000) square feet of sheds covering said platform.

That the party of the first part agree to have said Compress Platform and Sheds ready for operation for the coming cotton season of 1919, barring accident or causes beyond the control of said Compress Co. Party of the first part agree to operate said compress during the season of 1919.

*     *     *     *     *     *     *

That the party of the second part agree to furnish site for said Compress as per sketch attached. Title to said land to remain in the name of second party until Compress, platform and sheds are built and ready for operation, at which time the parties of the second part are to deliver their Warranty Deed conveying said land to the party of the first part.

Prior to September 10, 1919, the petitioner completed the erection of the compress, platform and sheds and placed them in operation on or about September 10, 1919. The committee of citizens of Robstown who had executed the contract above recited conveyed the property to the petitioner. This conveyance recited the contract and set forth that all of the obligations of the Aransas Compress Co. thereunder had been fully performed.

The funds with which to purchase said property were raised by public subscription in Robstown. There was no consideration to such subscribers or to the committee making the conveyance other than such benefits which might result from the erection of the compress plant. At the time of the conveyance the property so conveyed was of the fair market value of $3,000. The Commissioner has included in the taxable income of the petitioner for the fiscal year ended May 31, 1920, $3,000 on account of the receipt of said land.

In March, 1920, a committee of citizens of Sinton, Tex., entered into a written agreement with the president of the petitioner, the material portions of which are as follows:

THIS AGREEMENT, made and entered into, this 18th day of March, A. D. 1920, by and between J. K. Cain and associates of Nueces County, Texas, parties of the first part, and D. Odem and W. C. Sparks of the County of San Patricio County, Texas, parties of the second part,

WITNESSETH: That parties of the first part, in consideration of the agreement and guarantee upon the part of parties of the second part hereinafter stipulated, do hereby agree and bind themselves to erect at Sinton, San Patricio County, Texas, a first class 90 inch Morse Compress, together with other necessary machinery in connection therewith, with ground floor of shell and runways, or a wooden platform of not less than 60,000 square feet of floor area, together with sheds of not less than 50,000 square feet, and do hereby agree and bind themselves to have the same ready for operation during the cotton season of 1920, barring accidents and other causes entirely beyond the control of said parties of the first part.

In consideration of the above agreement and obligation being carried out and completed upon the part of parties of the first part, parties of the second part hereby agree and guarantee that they will pay or cause to be paid to parties of

the first part a cash bonus in the sum of Five Thousand Dollars ($5,000.00), one half of which amount or the sum of $2,500.00 shall be paid, when said press machinery arrives and is unloaded at Sinton, Texas, and the balance of said amount shall be paid when said press is erected, tested and ready for operation. And said parties of the second part do hereby further agree that upon the completion of said agreement by parties of the first part, they will give free of cost to parties of the first part, title to Lot No. — in Block No. — in the town of Sinton, title to said lot being now in the Coleman-Fulton Pasture Co., it being the only lot in said block not now owned by the Aransas Compress Co.

Pursuant to said agreement the petitioner erected on said land a compress plant and proceeded to operate the same. Within the taxable year ended May 31, 1920, the petitioner received a deed to said land and received in addition cash in the amount of $4,912.50. The lot·had a fair market value of $150 at the time of the conveyance. The funds with which to purchase said property were raised by public subscription in Sinton. There was no consideration to such subscribers or to the committee making the conveyance other than such benefits which might result from the erection of the compress plant.

Early in 1921 the petitioner began negotiations with the citizens' committee of Sinton for the erection of a cotton warehouse and loading platform in Sinton, which negotiations lead to an oral contract under the terms of which the petitioner was to erect such warehouse and platform and was to receive from the committee a conveyance of the land upon which it was to be erected. Construction of the warehouse was started in May and completed in July, 1921. The property upon which the warehouse was built was conveyed to the petitioner by deed dated April 8, 1922. As of May 31, 1921, this land was set up on the books of the taxpayer at a value of $5,000. In computing the deficiency the Commissioner has added to the income of the petitioner for 1921, $9,912.50, being the sum of $4,912.50 in cash received as aforesaid, and $5,000 as the value of the land upon which the warehouse was erected.

The rates for compressing cotton during 1920 and 1921, as now, were prescribed by the Railroad Commission of Texas, as also was the liability of compresses for broken bands and spiders and reconditioning cotton.

Under the laws of the State of Texas, since 1913 persons or corporations storing cotton are made public warehousemen, required to file certificate and bond, and their charges for storage are subject to regulation by the Commissioner of Markets and Warehouses. Taxpayer had complied with all the requirements of the law.

### OPINION.

PHILLIPS: Citizens of certain communities contributed land and cash to the petitioner to induce it to erect cotton compresses and

warehouses in such communities. Such facilities became public utilities, subject to regulation as such by the State. Those making the donations received no direct benefit, nor was any service to be performed for them by the petitioner.

In *Edwards* v. *Cuba Railroad Co.*, 268 U. S. 628, the Supreme Court had a similar situation before it and determined that no income was received by the beneficiary of a Government subsidy. That case was stronger for the Government than was the present one, for there the Government obtained certain concessions in respect to Government transportation. Here no argument can be made that the payments to the corporation could be construed as advances for services to be rendered. Since both the railroad in that case and the petitioner in this are public utilities, bound to serve the public indiscriminately, the only possible distinction would appear to be that in the one case aid was extended by the Government and in the other from private sources. The Supreme Court in its opinion, however, indicates that no distinction is to be drawn between " such aids, gifts and grants from the Government, subordinate political subdivisions or private sources "; in each case such subsidy payments are not made as mere gratuities but to advance the public benefit and do not constitute income.

In *Appeal of Liberty Light & Power Co.*, 4 B. T. A. 155, the Board considered at some length a somewhat similar situation and there reached the conclusion that no taxable income was received. This case is governed by those cited.

Reviewed by the Board.

> *Decision will be entered on 20 days' notice, under Rule 50.*